<span>RODEBAUGH v. HOLLINGS-WORTH.</span>

---

## RODEBAUGH *v.* HOLLINGSWORTH.

In slander, the averment in the declaration of a slanderous charge which assumes the existence of a fact, is a sufficient averment of such fact; especially on general demurrer or after verdict.

Whoredom includes every species of illicit intercourse between the sexes.

A declaration for slander by a female plaintiff, showing a charge made against her of whoredom, is good.

In slander, if the declaration is sufficient without regard to the *colloquium* or *innuendoes*, they may be regarded as surplusage.

An inference expressed in the *colloquium* or *innuendoes* in a declaration for slander, if not a correct inference from the words averred to have been spoken, can not affect the sufficiency of such averments.

*Colloquiums* and *innuendoes* are only necessary to remove uncertainty in the identification of persons, or in the meaning of words and sentences and their application.

In cases of such uncertainty they form a material part of the declaration and can not be rejected as surplusage.

ERROR to the *Marion* Circuit Court.                    *Wednesday, June 6.*

PERKINS, J.—Case for slander. The declaration follows: "State of *Indiana*, *Marion* county. In the *Marion* Circuit Court. *Rachel C. Hollingsworth*, an infant within the

May Term,
1855.

RODEBAUGH
v.
HOLLINGS-
WORTH.

age of twenty years, by her next friend *George Hollings-worth*, whose consent thereto in writing is filed in Court, complains of *Jacob Rodebaugh* of a plea of trespass on the case for slanderous words spoken. For that the plaintiff is, and always has been, a person of good character, and honest and chaste in all her deportment; and, until the committing of the grievances by the defendant hereinafter set forth, the plaintiff had never been suspected of the crime of incest, or fornication, or any other disgraceful or unchaste act. Yet the defendant, well knowing the premises, but maliciously intending to ruin the plaintiff's fair name and reputation, and bring her into public infamy, disgrace and scandal, in a certain conversation which he, defendant, had, to-wit, on the twentieth day of *June*, in the year eighteen hundred and forty-nine, in the presence of *Charles Hanes* and other good and worthy citizens of the state of *Indiana*, of and concerning the plaintiff, and of and concerning her being guilty of incest with her brother hereinafter named, the said defendant maliciously and falsely spoke and published, in the presence of the citizens aforesaid, of and concerning the plaintiff, and of and concerning the plaintiff's being guilty of incest with her said brother, the false, scandalous, malicious and defamatory words following, to-wit: Somebody told me (defendant meaning) that she (plaintiff meaning) acknowledged to him (meaning one *John Cropper*) that *Nero* (meaning the brother of the plaintiff) had screwed her (meaning that plaintiff's brother had carnal intercourse with the plaintiff) up stairs the night before. And again, she (plaintiff meaning) owned to him (meaning one *John Cropper*) that *Nero* (plaintiff's brother meaning) had screwed her (meaning had carnal intercourse with plaintiff) up stairs the night before. And again, I (defendant meaning) heard somebody say that *John Cropper* was there (meaning at the house of the father of plaintiff with whom plaintiff resided) one night courting *Rachel* (meaning plaintiff) and he (meaning *Cropper*) was hugging her (meaning plaintiff) and she (meaning plaintiff) asked him (meaning *Cropper*) to go into the wood-house with her (meaning plaintiff)

and he (meaning *Cropper*) went in to screw (meaning to have carnal intercourse with) her (meaning plaintiff) and when they (meaning plaintiff and said *Cropper*) were at it (meaning having carnal intercourse) he (meaning said *Cropper*) told her (meaning said plaintiff) that somebody had screwed (meaning had carnal intercourse with) her (meaning said plaintiff) before; that she (meaning plaintiff) denied it at first, then directly she (meaning plaintiff) acknowledged to him (meaning *Cropper*) that *Nero* (meaning said brother) had screwed her (meaning had carnal intercourse with her, plaintiff,) up stairs the night before. And again, I (meaning defendant) heard somebody say that *John Cropper* was at *Hollingsworth's* one night court-ing *Rachel* (meaning plaintiff), and he (meaning *Cropper*) was hugging her (meaning plaintiff) and she (meaning plaintiff) asked him (meaning *Cropper*) to go into the wood-house with her (meaning plaintiff), and they went in there, and he (meaning *Cropper*) got at it and was screwing (meaning was having carnal connection with) her (meaning plaintiff), and he (meaning said *Cropper*) told her (meaning plaintiff) that somebody had screwed (meaning had carnal intercourse with) her (meaning plaintiff) before; she (meaning plaintiff) denied it at first, but he (meaning *Cropper*) pinned it to her (meaning plaintiff) so tight that she (meaning plaintiff) owned it at last, and said that *Nero* (meaning her said brother) had screwed (meaning had carnal intercourse with) her (meaning plaintiff) the night before up stairs, meaning thereby that the plaintiff was and had been guilty of fornication and incest. And the plaintiff avers that the word screwed had, at the time and place when and where the said word was used by the defendant, a provincial meaning, to have carnal intercourse. And the plaintiff avers that the defendant used the said word screwed in a criminal sense, and thereby meant, and was understood by those who heard him to mean, the act of having carnal intercourse, and meant to charge, and was so understood by those who heard him, that the plaintiff was guilty of such acts with her said brother and said *John Cropper*; by means whereof the

plaintiff has suffered in her good name, fame and reputation, and suffered damage thereby, to-wit, in the sum of two thousand dollars. Hence she sues. *Lucian Barbour*, for the plaintiff."

The defendant pleaded the general issue and a sham plea. The sham plea was demurred to, the demurrer sustained, and, as to that plea, the plaintiff had judgment.

The general issue was tried by a jury, and a verdict for 1,000 dollars was returned for the plaintiff.

The defendant prosecuted a writ of error in this Court to test the validity of the declaration which the demurrer to his sham plea brought before the Court below for judgment.

No objection is taken upon any other part of the record. We proceed to examine the declaration. Two objections are taken to it.

1. That it does not aver that the plaintiff, *Rachel*, is unmarried, and, hence, leaves it uncertain whether adultery, or fornication, or incest is charged.

We think we could not say, after verdict for the plaintiff on the general issue, that the declaration does not show, by reasonable implication, the non-marriage of said *Rachel*. It avers that she is an infant within the age of twenty years, is still living with her father, and that one person, having sexual intercourse with her, did so on a "courting" visit to her. Now, courting, in its popular acceptation, means wooing or soliciting in marriage. The very charge made against her, then, assumes that she is a feme sole; and it has been decided that where a slanderous charge assumes the existence of a fact, proof of the charge itself is a sufficient proof of the assumed fact. *Hays* v. *Allen*, 3 Blackf. 408.— *Hesler* v. *Degant*, 3 Ind. 501. By the same rule, the averment of such a charge in the declaration would be a sufficient averment of the fact assumed in it; and especially should it be so considered on general demurrer or after verdict.

So far upon the assumption that it was necessary to aver the want of marriage of the plaintiff; but we do not

mean to decide that fact.    And this brings us to the
second objection, which is—

2. That the words complained of in the declaration do
not support the *colloquium* and *innuendoes* contained in it.

It is urged that the plaintiff, in the *colloquium* and *innuendoes*, has elected to insist upon the charge of incest; that she is bound by the meaning she has seen fit to assign to the words used; that they do not amount to a charge of incest, because they do not show the connection charged to have been between persons over sixteen years of age and with a knowledge of their relationship, and, hence, that the declaration is fatally defective, according to *Lumpkins* v. *Justice*, 1 Ind. R. 557.    This argument proceeds on the idea that it was necessary for the plaintiff to show that a certain charge of a particular offence had been made against her.    In this description of cases, where the suit is by a male plaintiff, such is the case.    *Lumpkins* v. *Justice*, *supra*.    Not so where the plaintiff is a female.    By our statute it is actionable to charge a female with whoredom, a thing not in itself necessarily criminal in the eye of the law; for any act of sexual intercourse between a married female and a male person not her husband, or between an unmarried female and a male person, is whoredom, and a single act of the kind, according to the case of *Alcorn* v. *Hooker*, 7 Blackf. 58, makes a woman a whore.    A declaration for slander, therefore, by a female plaintiff, which shows a charge made against her of whoredom, is good. 2 R. S., p. 205, s. 788.    Such is the declaration in the case before us.    And it shows such a charge in its averments, independently of the *colloquium* and *innuendoes*, and independently of the question of marriage; for it avers that the defendant charged her with having sexual intercourse, on one day, with her brother *Nero*, and, on the following day, with *John Cropper*.    Now, both these persons could not have been husbands of the plaintiff, and the intercourse with one, if not both of them, must have been an act of whoredom.    It may have been in the one case incest, and in the other fornication; but be that as it may, in either case the act was whoredom.    Whoredom is a compre-

May Term,
1855.

hensive term, including every species of illicit intercourse between the sexes.

The declaration, then, being sufficient without regard to the *colloquium* and *innuendoes*, they may be regarded as surplusage. Any erroneous inference of the plaintiff contained in them will not vitiate averments good and sufficient without the inference. Such seems to have been the course of practice in this Court, without expressly deciding the point. See *Dodge* v. *Lacey*, 2 Ind. R. 212.— *Abshire* v. *Cline*, 3 *id.* 115.

*Colloquiums* and *innuendoes* are only necessary to remove uncertainty that would otherwise exist as to persons, or the meaning of words and sentences and their application. See *Hays et ux.* v. *Mitchell et ux.*, 7 Blackf. 117.— *Worth* v. *Butler*, *id.* 251.— *Roella* v. *Follow*, *id.* 377.— *Stucker* v. *Davis*, 8 *id.* 414.—Note to *Harper* v. *Delp*, 3 Ind. R. 225.—*Linville* v. *Earlywine*, 4 Blackf. 469. And in cases where they so become necessary, they form a material part of the declaration, and can not be rejected as surplusage.

*Per Curiam.*—The judgment is affirmed with costs.

*H. O'Neal* and *D. Wallace*, for the plaintiff.

*L. Barbour* and *A. G. Porter*, for the defendant.