Nov. Term, 1857.

SMAWLEY
v.
STARK.

*C. D. Murray* and *H. A. Brouse*, for the appellant.

(1) This volume, *post.*

---

## SMAWLEY *v.* STARK.

In an action for slander, where the slanderous words were spoken by indirection, without naming the plaintiff, the opinions of witnesses well acquainted with

the parties and circumstances, to whom the words were spoken, are admissible in evidence, to show that the plaintiff was the person referred to. The grounds of such opinions are open to inquiry on cross-examination.

Nov. Term, 1857.

SMAWLEY
v.
STARK.

APPEAL from the *Decatur* Circuit Court.

STUART J.—*Smawley* sued *Stark* for slanderous words spoken. Verdict and judgment for defendant. *Smawley* appeals.

Monday, November 23.

There is, really, but one question in the case, and that turns upon the ruling of the Court on a question of evidence. The other points argued, it is not material to notice.

The complaint shows that the house of *Stark* was burglariously entered, in *June*, 1853, by persons to the plaintiff unknown, and 800 dollars in money, the property of *Stark*, stolen. It is further averred that the plaintiff was, at the time, a near neighbor of *Stark*, had frequently borrowed money of him, and was well acquainted with his house. It is further averred, as a fact well known to *Stark*, and those to whom he addressed the language complained of, that about the time of speaking the words, the plaintiff had gone to the state of *Iowa;* and that the words were spoken of and concerning the plaintiff, and of and concerning the burglary aforesaid, &c.

The words are set out in a variety of ways. The defendant denied the several matters alleged.

On the trial, one witness testified that when defendant was asked if he had heard anything of his money, which was stolen, he answered: "I do not know that I have. I thought I had treed it, but it came down that tree, and went up another. The man that stole my money, is a great many miles from here. It is a man well acquainted with my house, for he reached over *Inman's* till, and seized my money, in an old greasy newspaper. He was as well acquainted with the house as I was, because *Inman's* pocket-book was in the first till, and he reached over that pocket-book, and seized on *Coley's* money." *Stark* further said, that he thought it was a person intimate about his house. He had accommodated that man many a time, in loaning him money, and charged him little or no interest.

It was a near neighbor that got his money; but he did not say how near. He did not, however, name the plaintiff, Smawley.

The witness was then asked: Who did you understand the defendant to refer to, in the conversation you have spoken of, in which he spoke of the man who got his money? To this question, the defendant objected. The objection was sustained, and the ruling excepted to, and it is here assigned for error.

On the one side, it is contended that the witnesses are to speak of facts only—not their opinions. It is for the jury to say, from the facts in evidence, what the defendant meant, and at whom the charge of stealing the money was aimed. In support of this view of the case, several authorities are cited. 1 Am. Lead. Cases, 154.—*Gibson* v. *Williams*, 4 Wend. 320.—*Snell* v. *Snow*, 13 Met. 282.—*Goodrich* v. *Davis*, 11 Met. 473. But it is unfortunate for the defendant's position, that some of these very cases were cited in the Supreme Court of *Massachusetts*, and reviewed in a case presenting very similar features to that at bar.

Thus, in *Miller* v. *Butler*, 6 Cush. 71, the facts were these:

Action for libel. In the writing alleged to be libelous, reference was made by indirection. Thus, allusion was made to "the doctor," "the colonel," &c., and certain initials were used. But the plaintiff was not named. The question was put to the witnesses, as in the case at bar, who was meant? In reply, the witnesses were permitted to give their opinion, that by "the doctor," was meant the plaintiff. Another witness was asked whether he had any opinion who the initials referred to. He answered, " I think it must be *Bartlett's* wife." So, also, that the words "the colonel," meant Col. Miller, the plantiff. The defendants objected; but the objections were overruled, and the defendant excepted. In the Supreme Court, the point was thus disposed of by DEWEY, J.: " The evidence to show that the plaintiff was the person referred to in the libel, was properly admitted. 2 Greenl. Ev. s. 417. The case of *Snell* v. *Snow*, 13 Met. 278, was different from the

present; and the case of *Goodrich* v. *Davis*, 11 Met. 473, is not opposed to it, but rather affirms the principle."

In 2 Greenl. Ev., s. 417, the following language is used: "The meaning of the defendant is a question of fact, to be found by the jury. It may be proved by the testimony of any persons conversant with the parties and circumstances; and from the nature of the case, they must be permitted, to some extent, to state their opinion, conclusion and belief, leaving the grounds of it to be inquired into on a cross-examination" (1). And this seems to be the well settled modern doctrine.

In the case at bar, the witness was well acquainted with the parties and circumstances. If he and others, who heard *Stark's* words, understood well at whom they were aimed, all the mischief was accomplished by the words spoken, which could have been done by naming the defendant in terms. If the bystanders understood *Stark* to charge *Smawley* with stealing his money, it matters little, save as to the facility of proof, in what way the charge was made— whether in express, positive language, or by indirection. When the idea was thus fully conveyed to the bystanders, the stain of burglary fastened on his victim—the purpose of the defendant was accomplished. It is quite immaterial how it was done. The bystanders understood it; and the injury was inflicted. That it has been done by indirection, does not palliate the wrong, nor lessen its injurious effects. It would be a reproach to the Courts, and to the rules of evidence, if the slanderer could thus evade responsibility.

The man who makes his charge direct and unequivocal, shows the sincerity of his own convictions; and in open, manly terms, challenges investigation, and braves the consequences. But he who seeks to poison the public mind against his neighbor, by cunning and indirection—doing all the injury which could result from a direct charge, yet seeking to evade responsibility—ought not to be favored by the Courts.

It is true that, ordinarily, the opinions of witnesses are not admissible in evidence. But there are well established exceptions as to the opinions of professional men, in rela-

tion to their peculiar art or mystery, and the like. The case at bar but illustrates the necessity of enlarging the scope of the exceptions. It seems, in the words of GREEN-LEAF, "from the very nature of the case, that the witnesses must be permitted, to some extent, to state their opinion, conclusion and belief." The grounds of that opinion or belief being open to inquiry on cross-examination, there can be but little danger of abuse. From the facts, the opinions of the witnesses as to the person meant, and the grounds of these opinions, the jury will be enabled to reach a more satisfactory conclusion, than from the facts themselves. Besides, this exception to the general rule can only be called into requisition, when there is the purpose to injure, conjoined with equivocal language to elude the law. The exception is allowed on the same principle that exceptions are generally allowed, to fasten just responsibility where it belongs—in this case, on the author of the slander. Otherwise, justice would be defrauded, and the law inefficient to protect private character. The witness is only permitted to explain an ambiguity in the conversation, just as he would in a writing, that it may have its proper legal operation.

The Court should have permitted the question to be answered, giving the jury the benefit of the opinion and belief of witnesses, whether *Stark* meant to charge *Smawley* with burglary.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. S. Scobey* and *W. Cumback*, for the appellant.

*J. Ryman, J. Gavin,* and *J. R. Coverdill,* for the appellee.

(1) This section substantially follows 2 Stark. on Slander, side pp. 51, 52, and the same *English* authorities are cited in support of both texts, on this point. They are—Ld. ELLENBOROUGH, C. J., in *Roberts* v. *Camden*, 9 East, 96; Sir W. BLACKSTONE, 2 W. Bl. 962; GOULD, J., in *Oldham* v. *Peake*, 2 W. Bl. 959, Cowp. 278; *Penfold* v. *Westcote*, 2 N. R. 335; *Fleetwood* v. *Curley*, Hob. 267. GREENLEAF adds, *Van Vechten* v. *Hopkins*, 5 Johns. 211.