## GABE v. MCGINNIS.

LIBEL.—*When Charge of Crime not Necessary to Constitute.*—A publication which tends to injure the character of a person, or bring him into contempt or ridicule, may be libellous, although it does not charge a crime.

SAME.—*Innuendo —Pleading.*—Where a charge is libellous without an innuendo, an innuendo contained in the complaint, though erroneous, is but surplusage and does not vitiate.

SAME.—*Libel Per Se.*—The following publication, taken altogether, is a libel *per se,* independent of the criminal charge :  "Never go into a lawsuit with Arch McGinnis, so long as he may be the owner of those books that beat " certain named persons, "and whoever they might be brought up against, for McGinnis is chiefest among ten thousand and the one altogether lovely—on the swear.  We met McGinnis under the fish last week, in a suit on a plain promissory note for five hundred and eighty-five dollars, and he came very near swearing us into his debt.  If Beecher is really desirous of laying out Theodore Tilton, in his suit now in progress in New York city, let him send for our friend McGinnis."

SAME —*Excessive Damages.*—In such case five hundred dollars damages are not excessive.

SAME.— *When Libel is a Question for the Court* —Where a publication complained of as libellous is plain and unambiguous, it is a question of law for the court whether it is a libel or not.

SAME.— *When a Question for the Jury.*—Where a portion of a publication relating to a charge of crime is ambiguous, it is proper to leave the question as to whether a crime is charged to the jury.

SAME.—*Proof of Damages.*—When a publication is a libel *per se*, 'no proof of damages is necessary.

SAME.—*Parol Release.*—A cause of action for libel may be released by parol.

PRACTICE.—*Admission of Irrelevant Evidence, when Harmless.*—The admission of irrelevant testimony, if harmless, does not constitute a fatal error.

SAME.—*Motion to Make Certain.—Demurrer.—Pleading.*—Where a good defence is stated indefinitely in a paragraph of answer, the remedy is by motion to make certain and not by demurrer.

SAME.—*Harmless Error.*—It is a harmless error to sustain a demurrer to a paragraph of answer, when the defence stated therein is admissible under another paragraph which is pleaded.

From the Orange Circuit Court.

*J. W. Buskirk, H. C. Duncan* and *G. W. Friedley,* for appellant.

*C. F. McNutt* and *R. W. Miers,* for appellee.

PERKINS, J.—The appellee sued the appellant in the Monroe Circuit Court, for libel. A change of venue was taken to the Orange Circuit Court. The complaint was in three paragraphs.

The first, after an endorsement of good character, etc., alleged that the appellant, the defendant below, was the owner, editor and publisher of the Bloomington Progress, a newspaper of general circulation, etc. "And plaintiff further says that, before the committing by the said defendant of the grievance hereinafter set forth, a certain civil action had been depending in the Monroe Circuit Court, in the State of Indiana, wherein the said William A. Gabe, defendant in this action, was plaintiff, and this plaintiff was defendant, which said action was brought by the defendant, the said William A. Gabe, as assignee of one James Small, on a promissory note against the plain-

tiff. And plaintiff further says, that the said action was tried and determined before the committing by the defendant of the grievance hereinafter set forth, to wit, at the December term, 1874, of the said Monroe Circuit Court, before the Honorable Eliphalet D. Pierson, sole judge thereof; that on said trial, and during the progress thereof, this plaintiff was examined under oath as a witness, and as such witness testified, in his own behalf, to a material point in the issue on trial, having first been sworn to tell the whole truth and nothing but the truth, by William F. Browning, the clerk of said court, in the presence and under the direction of said judge. Yet the said defendant, well knowing the premises, and contriving, and wickedly and maliciously intending, to injure this plaintiff in his good name and reputation, and cause it to be believed that the plaintiff had been guilty of the crime of perjury, heretofore, to wit, on the 13th day of January, 1875, as such owner, editor and publisher of said paper, falsely, wickedly and maliciously did compose and publish, and did prepare and cause to be published, in said Bloomington Progress, a newspaper, etc., as aforesaid, of and concerning this plaintiff, and of and concerning the said action, and the testimony given therein by this plaintiff, a certain false and defamatory libel, containing, among other things, the false, malicious and libellous matter following and concerning this plaintiff, and of and concerning the said action and the testimony therein given by this plaintiff, that is to say :

"'We are in receipt of a letter from King Kalakaua, in which, after wishing the Progress success the coming year, he says in pure Hawaiian :

"'Ka makua mana loa maita mai ia makou E haltai aku rel we ka haan haah au E wau ka waluhia O rei pac aiua wai hawaua hiihau malolo o kou maloua.

"'As many of our readers may not be posted in this language, we translate this to be :

" 'Never go into a lawsuit with Arch McGinnis (plaintiff meaning) so long as he may be the owner of those books that beat Sutherland, Jim Ryan, Cookerly, and whoever they might be brought up against, for McGinnis (plaintiff meaning) is chiefest among ten thousand, and the one altogether lovely—on the swear."

" 'We begin to believe that old Kalakaua is no bug-eater if he is a man-eater, for we met Mr. McGinnis (plaintiff meaning) under the fish (in the court-house at Bloomington meaning) last week in a suit on a plain promissory note for five hundred and eighty-five dollars, and he came very near swearing us into his debt. If Beecher is really desirous of laying out Theodore Tilton, in his suit now in progress in New York City, let him send for our friend McGinnis (plaintiff meaning).' Meaning then and thereby, and being understood by those who read or heard the same read to charge that this complainant, in giving his testimony in the said action as a witness under oath, as before mentioned, had sworn wilfully, corruptly and falsely, touching the matter or matters in issue in the said trial between the defendant and this plaintiff, and that this complainant, in testifying as aforesaid, had committed wilful and corrupt perjury. By reason," etc.

The second and third paragraphs were based upon the same publication, which they severally set out, the paragraphs conforming to the form given in the code, and section 86 thereof, 2 R. S. 1876, p. 78, which provides that " it shall be sufficient to state generally that the defamatory matter was published or spoken of the plaintiff."

A demurrer for want of facts was overruled to the complaint, and exception entered.

The defendant answered in four paragraphs :

1. General denial ;

2. A release generally, not alleged to have been in

writing, but alleged to have been for a valuable considera-
tion (see *Goodrich* v. *Johnson*, 66 Ind. 258) ;

3. A parol release, setting out the particular facts
claimed to have constituted it and to have showed the
consideration for it ;

4. The fourth paragraph set up matter in mitigation.

A demurrer was sustained to the second, and overruled
to the third and fourth paragraphs severally. Exceptions
were entered. A motion to strike out the fourth para-
graph of answer was overruled. Exception reserved.

Reply in denial of the third and fourth paragraphs.

Jury trial. Verdict for the plaintiff for five hundred
dollars. Motion for a new trial overruled, and judgment
on the verdict. Appeal.

The following is the assignment of errors :

1. In overruling the demurrer to the complaint ;

2. In sustaining the demurrer to the second paragraph
of answer ;

3. In overruling the motion for a new trial.

It may be doubted that the charges made in the publi-
cation are severally slanderous. The first is a charge, by
implication of some kind, against books owned by Mc-
Ginnis, but what does not appear. The only direct
charge against McGinnis is in these words, viz.: " For Mc-
Ginnis is chiefest among ten thousand, and the one alto-
gether lovely—on the swear." But in this charge there
is no averment that McGinnis had sworn to any thing.
It implies that he had the reputation of being unscrupu-
lous in testifying as a witness.

The second set of words charged to be libellous is : "We
met McGinnis under the fish last week, in a suit on
a plain promissory note for five hundred and eighty-five
dollars, and he came very near swearing us into his
debt."

This might have happened, and McGinnis have sworn

the truth only, if a set-off or want or failure of consideration was pleaded, and existed in fact.

The third set of words is this : " If Beecher is really desirous of laying out Theodore Tilton in his suit now in progress in New York city, let him send for our friend McGinnis."

This third set simply implied that McGinnis might swear untruthfully in behalf of Beecher ; but a charge that a party will swear falsely is not a charge that he has sworn falsely, and is not, as a general rule, actionable as slanderous. At all events, a crime is not charged in either of the several sets of words.

Do the three sets of words combined contain an actionable charge, a charge of perjury ? Stated in connection, they form the following article :

"McGinnis is chiefest among ten thousand, and the one altogether lovely—on the swear, and possesses a set of books that are very efficient in his behalf in lawsuits. We met McGinnis under the fish last week, in a suit on a plain promissory note for five hundred and eighty-five dollars, and he came very near swearing us into his debt.

"If Beecher is really desirous of laying out Theodore Tilton in his suit now in progress in New York city, let him send for our friend McGinnis."

The proper colloquium and innuendoes are contained in the first paragraph of the complaint. But "An innuendo can not aver a fact or change the natural meaning of language." *Hays* v. *Mitchell*, 7 Blackf. 117 ; *Ward* v. *Colyhan*, 30 Ind. 395. Colloquiums and innuendoes are necessary to remove uncertainty in the identification of persons or in the meaning of words and sentences, and their application. *Rodebaugh* v. *Hollingsworth*, 6 Ind. 339 ; *Smawley* v. *Stark*, 9 Ind. 386. See *Downey* v. *Dillon*, 52 Ind. 442. But in this case the party is not indicated by innuendo, but directly named in the libel.

As we have said, a crime is not charged. But it is not

necessary that a crime should be charged therein, to constitute a written publication a libel. *Johnson* v. *Stebbins*, 5 Ind. 364; *Steele* v. *Southwick*, 9 Johns. 214; *Smawley Stark*, 9 Ind. 386, 389. And, if the charge is libellous without an innuendo, an innuendo contained in the complaint, though erroneous, is but surplusage, and does not vitiate. *Rodebaugh* v. *Hollingsworth*, 6 Ind. 339; Folkard's Starkie Slander & Libel, by Wood, sec. 436, and note 25. And a charge made in writing may constitute a libel, which, if made verbally, would not constitute actionable slander. Starkie Slander & Libel, sec. 181, *et seq.*

"As to those libels which, by holding a person up to scorn or ridicule, and, still more, to any stronger feeling of contempt or execration, impair him in the enjoyment of general society, and injure those imperfect rights of friendly intercourse and mutual benevolence, which man has with respect to man, it is chiefly in this branch of libels that the action for words spoken, and for words written, substantially differ. The common law, in respect to our natural passions, gives no action for mere defamatory words, which he considers as transitory abuse, and not having substance and body enough to constitute an injury, by affecting the reputation. It confines, therefore, the action for slander to such of the grosser kind of words as impute positive crimes, or by charging a man with contagious disorders, tend to expel him from society, and to words which injure him in his profession and calling."

Comparing the publication in this case with those which have been held libellous both in England and in this country, there can be but one legal conclusion arrived at in respect to said publication, and that is, that it constituted a libel. *Johnson* v. *Stebbins*, 5 Ind. 364, and Starkie Slander & Libel, sec. 154, and cases cited.

There was no error in overruling the demurrer to the complaint.

The second error is well assigned, viz., that of sustain-

ing the demurrer to the second paragraph of answer, which set up a parol release upon a consideration. The cause of action in this case could be released by parol. *Develin* v. *Riggsbee*, 4 Ind. 464; *Leviston* v. *The Junction Railroad Co.*, 7 Ind. 597; *White* v. *Walker*, 31 Ill. 422; 2 Parsons Contracts, 6th ed., p. 713, note *s*.

In justification of the ruling upon this paragraph of answer, counsel say the paragraph was bad "because it set forth no facts, but a conclusion of fact and law. The facts constituting the pretended release should have been set forth, so that the court might determine whether the facts amount to a release."

The code, sec. 90, provides that: "In the construction of a pleading for the purpose of determining its effects, its allegations shall be liberally construed with a view to substantial justice between the parties; but when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defence is not apparent, the court may require the pleading to be made definite and certain by amendment."

Under the code, the paragraph was good upon demurrer. *Wiles* v. *Lambert*, 66 Ind. 494; *Sibbitt* v. *Stryker*, 62 Ind. 41.

But, as the second and third paragraphs of answer were based, we presume, upon the same alleged release, the error was harmless; the evidence touching the release could be and was given under the third paragraph of answer. It is not to be presumed, in the absence of anything appearing to the contrary, that there were two parol releases.

The remaining error assigned is the overruling of the motion for a new trial.

The grounds stated therefor in the motion for a new trial were four in number: 1. Verdict not sustained by the evidence; 2. Verdict contrary to law; 3. Exces-

sive damages; 4. Errors of law occurring at the trial, as follows:

1. In admitting in evidence the record of the suit between Gabe and McGinnis upon the note;

2. In permitting the plaintiff in this suit to prove by the defendant that he had not received a letter from King Kalakaua;

3. In permitting the plaintiff to prove by himself how long he had been in the army;

4. In permitting the plaintiff to prove by Daniel O. Spencer a conversation he had with defendant, in reference to the plaintiff;

5. In permitting the plaintiff to prove by Daniel O. Spencer and other persons named that they had read the alleged libellous article, and how they understood it;

6. In giving special instructions 3, 5, 8 and 10, asked by plaintiff;

7. In giving general instructions 1, 2, 3, 4, 5 and 6.

The court did not err in refusing a new trial on the first three grounds. The verdict was not contrary to the law and the evidence. The damages were not excessive. *The Indianapolis Sun Company* v. *Horrell*, 53 Ind. 527.

As to the specifications under the fourth ground for a new trial, viz., errors of law occurring at the trial, most of them are urged as valid, upon the theory that the article sued upon as libellous was not a libel, and would support the action only upon proof of the innuendoes, charging the crime of perjury. But, as we have seen, the article was a libel *per se*, independently of the criminal charge, which fact renders such specifications pointless, and the elaborate argument of counsel without force. As contributing to brevity, we state a few legal propositions:

1. Where the article sued upon is libellous *per se*, it implies malice, and proof of malice is not required, except the publication be a privileged one. *White* v. *Nicholls*, 3 How. 266; Townshend Slander & Libel, 171, sec. 130.

2. Where the publication complained of is plain and unambiguous, it is a question of law for the court, whether it is a libel or not. *Curtis* v. *Mussey*, 6 Gray, 261, and cases cited; *More* v. *Bennett*, 48 N. Y. 472.

3. Where the publication is a libel *per se*, no proof of damage is necessary. Starkie Slander & Libel, 482, sec. 622; *Guard* v. *Risk*, 11 Ind. 156; Townshend Slander & Libel, 107.

In this case, as we have seen, the publication was a libel *per se*, and it was not privileged. See *Ausman* v. *Veal*, 10 Ind. 355. It is said in *Proctor* v. *Owens*, 18 Ind. 21, on p. 23:

" The words proven being actionable in themselves, the defendant was not injured by proof that the witness understood them in an actionable sense. Hence, we need not decide whether the testimony was admissible, the error, if error was committed, being harmless."

It is held that the fact that the defendant had no intent to vilify the plaintiff, or that he did not know that the matter was libellous, was no excuse. Starkie Slander & Libel, 293, and note 1; Townshend Slander & Libel, 117, sec. 68.

On the witness stand, the appellee commenced his testimony by stating that he resided near Bloomington, and had done so from his early childhood, except the time he was absent in the army. He was asked how long a time that was. He answered, over appellant's objection, three years. He was not asked nor did he state in what army he was. The statement was merely to show his absence from Bloomington. This is said to have been irrelevant testimony. It may have been so. But the admission of irrelevant testimony may not necessarily constitute a fatal error. If such testimony be immaterial, its admission may be harmless. We think it was in this case. This remark applies properly to several other items of testimony.

The court permitted, over the defendant's objection, witnesses to give to the jury their understanding of the

meaning of the words contained in the publication sued upon. They answered that they understood them to charge perjury.

In its instructions to the jury, which, as a whole, were favorable to the defendant, the court left it to the jury to say whether, in their opinion, the libellous publication charged perjury or not, and to be influenced in the assessment of damages by their conclusion. The jury, as we have seen, found but five hundred dollars in damages. Perhaps we may safely infer, from the lightness of the damages, that the jury did not find that the publication contained a charge of perjury. See the damages assessed upon such a charge in the cases cited in *The Indianapolis Sun Company* v. *Horrell*, 53 Ind. 527. But the instruction given was correct. As we have seen, the publication was libellous without charging a crime. But, if it charged a crime, it was a more atrocious libel. The portion of the article relating to this question was ambiguous. In such a case, it was proper to leave the question, as was done in this case, to the jury. *Waugh* v. *Waugh*, 47 Ind. 580, and cases cited.

The judgment is affirmed, with costs.

Petition for a rehearing overruled.