## MITCHELL v. SHARON.

*(Circuit Court, N. D. California. July 11, 1892.)*

No. 11,522.

1. SLANDER—INNUENDO—DEMURRER.
    A complaint for slander charged the use of the following words in the sense indicated: "I can only regard her proposition (meaning the plaintiff) for money for the letters as a blackmailing scheme, pure and simple, (meaning that plaintiff is guilty of the crime of concocting a blackmail or extortion scheme.)" *Held* that, as the words were susceptible of the construction placed on them by the innuendo, the court, in considering a demurrer to the complaint, must accept that as the true meaning, though they were also susceptible of a different meaning. *Hess v. Sparks*, 24 Pac. Rep. 979, 44 Kan. 465, distinguished.

2. SAME—ACTIONABLE WORDS.
    It is not actionable to say of another that he "is guilty of the crime of concocting a blackmail or extortion scheme," as the words charge merely a plan or purpose to extort money, which is not punishable unless an attempt is made to carry it out.

3. SAME.
    It is actionable *per se* to charge another with being a "blackmailer," for this is equivalent to saying that he is guilty of the crime of extortion.

At Law. Action by Sarah Mitchell against Frederick W. Sharon for slander. On demurrer to the complaint. Demurrer sustained.

*Henry H. Davis*, for plaintiff.

*William F. Herrin*, for defendant.

HAWLEY, District Judge. This is an action of slander to recover $100,000 damages. No special damages are alleged. The complaint alleges—

"That on the 23d day of July, 1891, at the city and county of San Francisco, state of California, the defendant, in a certain discourse which he then and there had, of and concerning the plaintiff, in the presence and hearing of divers persons, (who understood that defendant meant the plaintiff,) the defendant falsely and maliciously spoke and published of and concerning the plaintiff the false, scandalous, and malicious words following: In answer to the question asked by one of said persons of defendant, 'Did you ever see Mrs. Mitchell?' (meaning the plaintiff,) the said defendant replied as follows: 'Never; and I know very little about her, (meaning the plaintiff.) From what I do know I can only regard her proposition (meaning the plaintiff) for money for the letters as a blackmailing scheme, pure and simple, (meaning that plaintiff is guilty of the crime of concocting a blackmail or extortion scheme.) I have never received any communication from her, (meaning the plaintiff,) but from what I hear I suppose she (meaning the plaintiff) has made demands on the estate for money. Those demands have not been regarded as anything more than mere talk,—the vapid emanations from an idle mind. She (meaning the plaintiff) will wait a long time before she (meaning the plaintiff) gets anything out of the Sharon estate for suppressing such information as she (meaning the plaintiff) may possess. I am often approached by people who talk mysteriously about revealing matters that would be detrimental to the Sharon estate if made public, but I always send them away as soon as they begin to make blackmailing demands. (Meaning to say of plaintiff that she is guilty of the crime of blackmail or extortion, and

comparing plaintiff with persons guilty of said crime of blackmail or extortion, and of making blackmailing or unlawful, criminal, or wrongful demands.)"

The defendant demurs to this complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

"The language of any part of an oral discourse is to be construed with reference to the entire discourse; hence words which, standing alone, would be actionable, may not be actionable when taken in connection with their context." Townsh. Sland. & L. § 137; *Van Vactor* v. *Walkup*, 46 Cal. 124. Under the Civil Code of California defining slander (section 46) and extortion, (Pen. Code, §§ 518, 519, 523, 524,) the charge, in order to be obnoxious to the law, must be of an offense actually committed or attempted, a punishable offense, and not of an offense existing in contemplation or intention merely. "Words merely imputing to the plaintiff a criminal intention or design are not actionable, so long as no criminal act is directly or indirectly assigned." Odg. Sland. & L. 124. To constitute words actionable *per se* they must import a charge of crime.

Do the words set forth in the complaint charge the plaintiff with the commission of a crime? The words, if considered to be ambiguous, should be construed "in the sense which hearers of common and reasonable understanding would ascribe to them, even though particular individuals, better informed on the matter alluded to, might form a different judgment on the subject." Townsh. Sland. & L. §§ 135–140. It is not necessary that the language used should charge the commission of a crime with such technical accuracy as would be required in an indictment. If the words uttered by the defendant were reasonably calculated to induce those who heard them to believe that the plaintiff was guilty of a crime they would be sufficient to support the action. Odg. Sland. & L. 121; *Wilson* v. *McCrory*, 86 Ind. 170; *Zeliof* v. *Jennings*, 61 Tex. 466. When the words spoken, construed in their entirety, are susceptible of two different constructions, one of which would make the words actionable and the other not actionable, it must ordinarily be left to the jury to determine, as a matter of fact, in which sense the words were spoken. Odg. Sland. & L. 113; *Waugh* v. *Waugh*, 47 Ind. 580; *Hayes* v. *Ball*, 72 N. Y. 418.

To charge a person with being a "blackmailer" would be equivalent to charging such person with being guilty of the crime of "extortion." The words are treated by lexicographers as synonymous. "The exaction of money for the performance of a duty, the prevention of an injury, or the exercise of an influence;" the "extortion of money from a person by threats of accusation or exposure;" the "wrongful exaction of money." The first question which naturally presents itself upon reading the complaint is, what did defendant mean by the use of the words, "From what I do know, I can only regard her proposition for money for the letters as a blackmailing scheme, pure and simple?" If there was no innuendo concerning these words, it would be the duty of the court to consider this language with reference to all the qualifying words

tending to control and lessen the accusations made by defendant, and ascertain from the entire discourse whether or not the words were reasonably susceptible of being construed as charging plaintiff with an attempt to commit the crime of extortion.    It is true that in a certain class of cases, where the words were of themselves clearly actionable *per se*, and it was attempted by an innuendo to enlarge the meaning of the words, or to give them a construction which they were not susceptible of, the courts have said that such an innuendo, being useless and unnecessary, might be rejected as surplusage.    Townsh. Sland. & L. §§ 339, 344; Odg. Sland. & L. 101, 105, 113; *Cooper* v. *Greeley*, 1 Denio, 360; *Com.* v. *Snelling*, 15 Pick. 335; *Gabe* v. *McGinnis*, 68 Ind. 538. The office of an innuendo is not to enlarge the meaning or to change the sense of the words spoken, and, if it does do so, it may be rejected; and, if the words themselves are clearly actionable, a demurrer to the complaint should be overruled, because the plaintiff, if he failed to show the meaning alleged in the innuendo, might fall back upon the words themselves, and claim that, taken "in their natural and obvious signification, they are actionable *per se* without the alleged meaning, and that, therefore, his unproved innuendo may be rejected as surplusage." Odg. Sland. & L. 102.    But in this case, even if it should be conceded that the words are susceptible of an interpretation that would make them actionable *per se*, still it is manifest from the allegations of the complaint that they are susceptible of a different meaning.    The plaintiff having deliberately declared what the proper construction should be,—which construction does not make the words actionable, —and the words themselves, taken in connection with the entire discourse, and qualifying sentences thereof, being, as plaintiff alleges, capable of such construction, is it not the duty of the court, upon demurrer, to accept the construction which the plaintiff has given to the words?    It seems clear to my mind that there is no other sensible view to take.    "Where language is ambiguous, and is as susceptible of a harmless as of an injurious meaning, it is the function of an innuendo to point out the meaning which plaintiff claims to be the true meaning, and the meaning upon which he relies to sustain his action.    *    *    *    When the plaintiff, by his innuendo, puts a meaning on the language published, he is bound by it, although that course may destroy his right to maintain the action."    Townsh. Sland. & L. § 338; Starkie, Sland. & L. § 565.

The meaning of the words is alleged to be "that plaintiff is guilty of the crime of concocting a blackmail, or extortion scheme."    This might be considered as seriously reflecting upon the plaintiff's character.    But it is not a punishable offense under the laws of the state.    To concoct a blackmailing or extortion scheme, simply imports the formation of a plan or purpose to extort money, and does not import any actual, wrongful use of force or threats, or imply any overt act whatever.    A mere "implication of an intent to commit a crime is not actionable." Townsh. Sland. & L. §§ 160, 161; Odg. Sland. & L. §§ 120–124; *Bays* v. *Hunt*, 60 Iowa, 251, 14 N. W. Rep. 785; *Fanning* v. *Chace*, (R. I.)

22 Atl. Rep. 275. The law upon this subject is well stated in 13 Amer. & Eng. Enc. Law, 353:

"Words which merely impute a criminal intention, not yet put into action, are not actionable. Guilty thoughts are not a crime. But as soon as any step is taken to carry out such intention, as soon as any overt act is done, an attempt to commit a crime has been made; and every attempt to commit an indictable offense is, at common law, a misdemeanor, and in itself indictable. To impute such an attempt is therefore clearly actionable."

The case of *Hess* v. *Sparks*, 44 Kan. 465, 24 Pac. Rep. 979, relied upon by plaintiff, is not in any respect in opposition to the views I have expressed. It was essentially different in its facts from this case. There the words spoken directly charged that the person alluded to was a blackmailer,—"What are you doing with that nine-dollar blackmail here?" And the innuendo set forth the meaning in clear, direct, and positive terms, "meaning thereby that the said plaintiff had committed the offense of extortion of money from a person or persons by threats of accusation or exposure, or opposition in the public prints, and that she was a common blackmailer and extortioner." Taking the innuendo in connection with the words charged, the court very properly held that the language imputed an offense punishable under the laws of that state.

I do not deem it necessary, in deciding upon the demurrer, to discuss or review the other questions argued by counsel as to the meaning of the other words used by the defendant. It is evident that, with the meaning which the plaintiff placed upon the words which we have considered, the other portions of the language used do not import a charge of any punishable offense. The demurrer is sustained.