### FRANK HESS v. NORA SPARKS.

1. WORDS, *Slanderous*. The following words, "What are you doing with that nine-dollar blackmailer here?" spoken of a woman, are actionable *per se*.

2. ———— *Words not Privileged*. The evidence in this case examined, and *held*, that the relation existing between the parties showed that the alleged slanderous words were not privileged.

3. INSTRUCTION, *Not Erroneous*. In an action for slander, it is not error for the trial court to instruct the jury that if they believe from the evidence that the words alleged to have been spoken, were spoken, and spoken maliciously, by the defendant, they were authorized to assess punitive damages against the defendant.

*Error from Cowley District Court.*

ACTION for slander. Judgment for the plaintiff, *Nora Sparks*, at the December term, 1887, for $1,300. The defendant, *Frank Hess*, brings the case here. The facts appear in the opinion.

*Peckham & Henderson,* and *Pyburn & Love,* for plaintiff in error.

*Hackney & Asp,* for defendant in error.

Opinion by GREEN, C.: This was an action for slander, by the defendant in error against the plaintiff in error. Two causes of action were set out in the petition:

"*First:* That the defendant on the 1st day of February, 1887, in the presence and hearing of divers persons, did falsely and maliciously speak and publish of and concerning the plaintiff the following false, malicious, and defamatory words, that is to say, 'What are you doing with that nine-dollar blackmailer here?' meaning thereby that the said plaintiff had committed the offense of extortion of money from a person or persons, by threats of accusation or exposure, or opposition in the public prints, and that she was a common blackmailer and extortioner.

"*Second:* That on said 1st day of February, 1887, in the presence and hearing of divers persons, said defendant did falsely and maliciously speak and publish of and concerning the said plaintiff the following false, malicious and defamatory words, to wit: 'She [meaning the plaintiff] tried to blackmail some one over at Dr. Sparks's;' meaning thereby that said plaintiff had tried to levy blackmail, or to extort money from some person or persons at Dr. Sparks's, in said Arkansas City, by threats of accusation or exposure, or of opposition in the public prints, for the purpose of obtaining money thereby."

To this petition the defendant below interposed a general denial. A trial was had by the court and jury, and resulted in a verdict and judgment for the plaintiff below for $1,300. Plaintiff in error brings the case here for review, and his first contention is that the petition did not state facts sufficient to constitute a cause of action, or that the matters charged in the petition were not actionable *per se.*

I. The evidence upon the trial showed that the plaintiff below was a young woman, engaged at the time the alleged slanderous words were charged to have been spoken, in the Arkansas City cracker factory, making boxes and packing crackers, on a salary of nine dollars a week, and were ad-

dressed to the president of the cracker company. Did these words, spoken under the circumstances, charge the plaintiff below with the commission of such an offense as would occasion pecuniary damages to her?

"When language is used concerning a person or his affairs, which from its nature necessarily must, or presumably will, as its natural and proximate consequences occasion him pecuniary loss, its publication *prima facie* constitutes a cause of action, and *prima facie* constitutes a wrong without any allegation or evidence of damage, other than that which is implied, or presumed, from the fact of publication; and this is all that is meant by the term 'actionable *per se*,'" etc. (Newell, Defam. 181.)

Applying this rule to the case at bar, what is meant or understood by the word "blackmailer," or to charge one with being a blackmailer?—as that is the substance of the charge in this case.

The word blackmail has a well-defined meaning: The extortion of money from a person by threats of accusation, or exposure, or opposition in the public prints. Hush-money, bribe to keep silence; the extortion of hush-money, obtaining of value from a person as a condition of refraining from making an accusation against him, or disclosing some secret calculated to operate to his prejudice. These definitions, given by the best lexicographers, convey to the mind what is intended to be understood by the use of the word. In speaking of the word "blackmail" and its understood meaning, Judge Monell says:

"In common parlance, and in general acceptation, it is equivalent to, and synonymous with, extortion—the exaction of money, either for the performance of a duty, the prevention of an injury, or the exercise of an influence. Not unfrequently it is extorted by threats, or by operating upon the fears or the credulity, or by promises to conceal, or offers to expose, the weaknesses, the follies or the crimes of the victim. There is moral compulsion which neither necessity, nor fear, nor credulity, can resist. It cannot be doubted, I think, that the term 'blackmailing' is invariably regarded as an unlawful act; and though, from its indefiniteness and comprehensiveness,

the offense is not classified as a distinct crime, nevertheless it is believed to be criminal, and to charge a man with 'blackmailing' is equivalent to charging him with a crime." (*Edsall v. Brooks*, 26 How. Pr. 426.)

The doctrine of construction has been well stated by Mr. Starkie, in his Treatise on Slander, page 44 :

"Both judges and jurors shall understand words in that sense which the author intended to convey to the minds of the hearers, as evinced by the whole circumstances of the case. It is the province of the jury, where doubts arise, to decide whether the words were used maliciously and with a view to defame; such being matter of fact, to be collected from all concomitant circumstances; and for the court to determine whether such words, taken in the malicious sense imputed to them, can alone, or by the aid of the circumstances stated upon the record, form the legal basis of an action."

Courts and juries will understand them in the same way that other people would. (*Walton v. Singleton*, 7 Serg. & R. 451.)

Lord Mansfield remarked, in the case of *Peake v. Oldham*, 1 Cowp. 272–3 :

"That where words, from their general import, appear to have been spoken with a view to defame a party, the court ought not to be industrious in putting a construction upon them different from what they bear in the common acceptation and meaning of them."

(*Goodrich v. Woolcott*, 3 Cow. 239; *Proctor v. Owens*, 18 Ind. 21; *Edgar v. McCutchen*, 9 Mo. 768; *Ranger v. Goodrich*, 17 Wis. 80.)

The charge alleged by the defendant in error against the plaintiff in error was, that she was a blackmailer; that is, that she was guilty of extortion, illegal compulsion. This, the plaintiff below alleges, meant that she had committed the offense of extorting money from persons by threats of accusation or exposure, or opposition in the public prints, and that she was a common blackmailer and extortioner. This is the innuendo to explain what the plaintiff below claimed was meant by the use of the words: "What are you doing with that nine-dollar blackmailer here?"

The purpose and object of the innuendo is to make certain what might otherwise be uncertain. One of the means of insuring certainty in a petition for slander or libel, is an innuendo. (*Henicke v. Griffith*, 29 Kas. 516; Townsh. Slander & Libel, § 335; *Rodenbaugh v. Hollingsworth*, 6 Ind. 339.)

Now, taking the innuendo in connection with the words charged, we think the language imputed an offense which was punishable under the laws of this state, and the petition stated facts sufficient to constitute a cause of action; and the court committed no error in submitting the matter to the jury to determine whether it was so understood or not.

II. It is insisted that the words spoken were privileged. We do not think the plaintiff in error was in a position to claim that the words charged were privileged. Text-writers have enumerated four kinds or classes of privileged communications: First, when the speaker of the alleged slander acted in good faith in the discharge of a public or private duty, legal or moral, or in the prosecutions of his own rights or interests. Second, anything said by a master concerning the character of a servant who has been in his employ. Third, words used in legal proceedings; and fourth, words used in ordinary parliamentary proceedings. The very words charged, " What are you doing with that nine-dollar blackmailer here?" would clearly indicate that the relation of master and servant did not exist, and that the communication was not privileged, and not made for honest motives.

III. The last error complained of is, that the court below instructed the jury that if they believed from the preponderance of the evidence that the words alleged to have been spoken were spoken, and spoken maliciously, by the defendant, that then they were authorized to assess punitory damages against the defendant. We do not think the court erred in giving this instruction. If the words were spoken maliciously, the jury had the right to assess punitive as well as compensatory damages. The words charged and proven, in our judgment, were actionable, *per se;* and it was the province of the jury to determine, in view of all the evidence, whether

punitive damages should be allowed or not. The rule seems to be quite well settled, that where the jury are satisfied by proper evidence that there was actual malice, they may allow punitory damages. (*Klewin v. Bauman*, 53 Wis. 244; *Bergmann, v. Jones*, 94 N. Y. 51; *Wood v. Hilbish*, 23 Mo. App. 389; *Casey v. Hulgan*, 21 N. E. Rep. 322.)

We cannot say, from all the facts which surround this case, that the damages were excessive. It is the peculiar province of a jury, in cases of this kind, to consider the whole of the circumstances of the case; the occasion of the speaking of the slanderous words, the relationship between the parties, and the determination of the amount of the recovery, under proper instructions. from the court; and, unless there has been an abuse of these prerogatives, courts will not interfere.

We do not think this case presents such a state of facts as warrants an interposition.

We recommend an affirmance of the judgment of the court below.

By the Court: It is so ordered.

All the Justices concurring.