(74 App. Div. 118.)

### CRASHLY v. PRESS PUB. CO. et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. LIBEL—MATTER LIBELOUS PER SE—QUESTION FOR COURT.

    In libel the question whether the matter complained of is actionable per se is for the court.

2. SAME—ARTICLE CHARGING FRAUD.

    A newspaper stated that C., a British subject, was engaged in abetting a revolution in Brazil; that the headquarters of the revolution were a shop kept by C.; that one G. had set about raising money to aid the revolt, and had issued a circular that, in the event of the revolt's success, a new government would turn the Brazilian National Railway into a stock company, and issue stock to pay loans to the insurgents, and that G. agreed, through his agents, a certain bank, which was really the "C. crowd," to issue in return for gold a receipt calling for stock; that thousands "bit at the tempting bait," the enterprise seeming, through the plausible rumors circulated by the C. crowd, sure of success; and that lies were started from C. *Held*, that the imputation of fraud was too general to apply to C. individually, and did not make the article libelous per se.

3. SAME—ARTICLE EXPOSING PARTY TO CONTEMPT.

    A statement in a newspaper published in the United States that one not a citizen or subject of a foreign state, but a resident therein, was engaged in a rebellion against such power, is not libelous per se, as bringing him into contempt or affecting his reputation, or causing him to be shunned or injuriously affected in his trade or calling.

4. SAME—ARTICLE CHARGING CRIME.

    A statement in a paper published in the United States that plaintiff, a British subject residing in Brazil, participated in a rebellion in Brazil, is not libelous per se, as charging a crime.

    O'Brien and Laughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action for libel by John Crashly against the Press Publishing Company and another. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

L. Ullo, for appellant.

J. W. Gerard, for respondents.

PATTERSON, J. This action was brought to recover damages for an alleged libel contained in the World, a newspaper printed in the city of New York. It is claimed that the defendants falsely and maliciously published in that newspaper an article which charged that the plaintiff was engaged in aiding and abetting a revolution in the city of Rio de Janeiro, Brazil, "wherein and whereby certain rebels took up arms against the constituted authorities in that city." The offensive article complained of is set out in full as an appendix to the complaint. It is stated in the complaint that the plaintiff was a subject of the queen of England, and was not a resident of the state of New York, but at the time of the publication of the articles complained of was a resident of Rio de Janeiro, in Brazil, South America. It is not alleged in the complaint that the newspaper called

¶ 1. See Libel and Slander, vol. 32, Cent. Dig. §§ 357, 358.

the "World" was ever circulated in Rio de Janeiro or in Brazil. The article is one which purports to have been written and sent to the newspaper by one of its correspondents in Brazil, and makes reference to a revolt, called a "naval war," which had taken place at Rio de Janeiro. In the article it is said that the headquarters of the revolution were in a small shop kept by a certain Crashly, an Englishman "of more or less indifferent repute." It then proceeds to state that Crashly's "right bower" was an old padre named Vilas, who had been knighted by the emperor, and longed for the restoration of the empire, while his "left bower" was a certain Capt. Jones, "the harbor man for the Lamport & Holt English Steamship Company." It is stated in the article that one Da Gama had set about raising money to aid in this revolt, and had issued a circular to the effect that, in the event of the revolt's success, a new government would turn the Brazilian National Railway, which is owned by the government, and is one of its largest sources of revenue, into a stock corporation, and issue stock in payment of all loans contracted by the insurgents, and that he (Da Gama) agreed, through his agent, the Bank of Rio de Janeiro, which existed only in name, but which was really "the Crashly crowd," to issue in return for the payment of gold in any sum, from £1 up, a receipt which would entitle the holders to shares of stock equal in value to three times the amount contributed to the rebel funds; that thousands of English and Portuguese bit at the tempting bait; "gold poured into the treasury." "Nearly every Englishman, and the majority of the Portuguese, from the humblest bank clerks to the capitalists, invested in the enterprise, which, through the plausible rumors circulated by the Crashly crowd, seemed sure of success." It is then stated in the article that a conspiracy was entered into to raise money through the "Crashly mill"; that the English minister aided in this conspiracy; that lies were started from Crashly's, and that the British minister, after every fresh lie from Crashly's, would call a meeting of the diplomatic corps, and beg his confrères to urge upon their governments the recognition of Da Gama as a belligerent. These statements of the article are those which directly refer to or affect the plaintiff. On the trial of the action, the complaint was dismissed, after the opening address to the jury by the plaintiff's counsel.

That disposition of the cause was right. It is insisted by the appellant that the charge contained in the article was libelous per se. A perusal of that article will show that, so far as this plaintiff is concerned, the only charge made against him is that he participated in a rebellion, and that the headquarters of that rebellion were at his place of business. It is not alleged in the complaint that he personally committed a fraud. The imputation of fraud in connection with the "Crashly crowd" is too general to make it apply to the plaintiff individually. It is well understood that, to make an article libelous per se, it must charge something which impeaches the honesty, integrity, virtue, character, or reputation of the complaining party, or which would expose him to public hatred, contempt, ridicule, or obloquy, or cause him to be shunned or avoided, or to injure him in his business, office, or occupation, or which accuses him

of crime. It is for the court to determine whether the words written or the publication complained of will bear the constuction that its statements are actionable per se. It cannot be held that the statement contained in a newspaper published in the United States that a person not a citizen or a subject of a foreign country, but resident therein, was engaged in a rebellion, would necessarily bring him into contempt, or affect his reputation, or cause him to be shunned, or injuriously affect him in his business, occupation, or calling. Nor can it be said that the article complained of here was libelous per se, as imputing to the plaintiff the commission of a crime. The plaintiff is not a resident of the United States, and never has been, apparently. He is a British subject living in South America, 3,000 miles away from the place at which the defendant's newspaper was published. Whatever relation the plaintiff may have had to historical events happening in that foreign country, it is quite evident that their nature is not to be determined by the laws of the state of New York. What the events or series of events that took place at Rio de Janeiro at the times mentioned in the newspaper article may have been, we do not know. Whether there was an armed resistance to the government of the republic of Brazil, or whether it was a local émeute in the city of Rio de Janeiro, we do not know, although the intimation of the complaint is that it was the latter. To state in an article that a person, under such circumstances, was associated with a movement in a foreign country against the government of that country, or of some department or locality of it, does not of necessity accuse him of a crime. Those crimes, the imputation of which to a person would constitute matter libelous per se, are such as are generally recognized by all civilized nations as offenses against society generally, such as piracy or murder or forgery. What is imputed to the plaintiff in this case is, in the absence of anything to show the contrary, what would be regarded here as a purely political offense committed in a foreign land. The plaintiff is not charged with acts of violence, nor is he personally charged with the frauds attributed to "the Crashly crowd," or the diplomats and others connected with them. The case is not similar to those in which a charge has been made that acts of treason under English law have been committed under that law. Acts of rebellion within the territory of the sovereign, whether the person committing those acts is a natural born subject or temporarily within the jurisdiction of that sovereign, may be regarded as treasonable acts, as was adjudged in the well-known case of David McLean, the American who was tried for aiding in a rebellion in the province of Quebec, and who was executed. 26 How. State Tr. 747. But the word "rebellion," as used in the article here, under the circumstances, does not necessarily have the signification which would be attributed to it if that word were applied in connection with acts done in the United States, or in a place in which the person accused of participating in the rebellion would be brought within the peril of the English law.

As the only claim made on the argument has been that the publication complained of is libelous per se, and as it has not been claimed that by reason of special damage the action can be maintained, we have

confined ourselves, in the consideration of the case, to the only point which has been made by the appellant.

The judgment entered upon the dismissal of the complaint should be affirmed, with costs. All concur, except O'BRIEN and LAUGH-LIN, JJ., who dissent.