Felix J. Aulisi, J.
This is a libel action and the defendants move for an order dismissing the second amended complaint upon the ground that it does not state facts sufficient to constitute a cause of action.
*1098 The corporate defendant is the publisher of the Glens Falls Post-Star and the Glens Falls Times and on February 15, 1958, said newspapers published the article complained of which reads as follows: “Adjourned from last Saturday when testimony was taken from Mr. Eeoux’s wife, Eita, the hearing was held in Supreme Court Chambers in the Colvin Building before Supreme Court Justice J. Clarence Herlihy of Glens Falls * * * Summary contempt proceedings against Mr. Eeoux, requested last week by Ernest B. Morris of Albany, attorney for Mrs. Eeoux, were also considered at today’s proceedings. According to Mr. Morris’ testimony, Mr. Eeoux and his wife converted some of the securities into cash and have refused to reveal the where-abouts of the money. This constituted ‘ contumacious conduct’ in'Mr. Morris’ opinion.”
The plaintiff contends that the article and particularly the words “ contumacious conduct ” are defamatory and have greatly injured her in her credit and reputation and that she has suffered great pain and mental anguish.
Annoying as the article may have been to the plaintiff, I do not believe that it constitutes defamation under the adjudicated cases.
A libel is an accusation, in writing or printing, against the character of a person which affects her reputation in that it holds her up to ridicule, contempt or shame, or tends to degrade her in the estimation of the community, to induce an evil opinion of her in the minds of right-thinking persons, or to dishonor or discredit her in the estimation of the public or her friends and acquaintances, to make her an object of reproach, to diminish her respectability, to change her position in society for the worse, or to cause her to be shunned or avoided (Crashley v. Press Pub. Co., 74 App. Div. 118; Kimmerle v. New York Evening Journal, 262 N. Y. 99; Mencher v. Chesley, 297 N. Y. 94; Nichols v. Item Publishers, 309 N. Y. 596).
The law of defamation is concerned only with injuries to one’s reputation. Written words, the effect of which is to invade privacy and to bring undesired notoriety, are without remedy, unless they also appreciably affect reputation. This is the domain, not of positive law, but of obedience to the unenforcible. From such harms one is protected only by the code of common decency. Humiliation, embarrassment and discomfort, unconnected with an attack upon plaintiff’s reputation are insufficient proof that plaintiff was libelled (Kimmerle v. New York Evening Journal, supra).
*1099 It is not enough, that a critic or malignant may torture the expressions into a charge of a criminal or disgraceful act, nor is it enough, on the other hand, that a possible and farfetched construction may find an inoffensive meaning in the language. The test is whether, to the mind of an intelligent man, the tenor of the article and the language used naturally import a criminal or disgraceful charge (More v. Bennett, 48 N. Y. 472).
The article in this case was not in and of itself libelous unless the language as a whole, considered in its ordinary meaning, naturally and proximately was so injurious to the plaintiff that the court will presume, without any proof, that her reputation or credit has been impaired thereby (Stone v. Cooper, 2 Denio 293; O’Connell v. Press Pub. Co., 214 N. Y. 352). No such presumption can be had here.
Webster’s Dictionary defines “contumacious” as follows: ‘ ‘ Perverse in resisting authority ” —■ “ Stubbornly disobedient ”. On their face the words “ contumacious conduct ” are not libelous. Most people have never heard of the “ contumacious ” and a good portion of those who have do not know what it means. It is my opinion that extrinsic facts are necessary to explain the import of the words used in order to make them susceptible of libel. Without extrinsic facts the language of the publication is capable of an innocent construction only and incapable of libel. Considered alone I do not believe that to say that a person is stubborn or contrary or obstinate or disobedient furnishes a base for holding that the writing is defamatory. Contumacious conduct is not a crime and the plaintiff had a perfect right to refuse to tell the whereabouts of the money.
Assuming that widespread notoriety came to the plaintiff from the publication, that it provoked idle, unfounded and baseless rumors, and that she suffered greatly as a result thereof, she must show more than that. A publication may be false and even offensive and yet not be actionable (Tracy v. Newsday, Inc., 5 N Y 2d 134).
Considered and weighed in the minds of right-thinking persons or in the minds of ordinary, just and reasonable citizens, do the words published and uttered by the defendants expose plaintiff to shame, hatred or ridicule? Does the article charge her with committing a crime? Does it subject her to contempt, aversion, or induce any unsavory opinion of her? In my opinion the answer to these questions is “ no ”, because under no reasonable construction can the article be read or regarded as defamatory of the plaintiff.
*1100 The second amended complaint having- failed to allege special pecuniary damages must necessarily be dismissed (Frawley Chem. Corp. v. Larson Co., 274 App. Div. 643) and in view of this conclusion a ruling on plaintiff’s motion to take the deposition of certain witnesses is denied.
Order may be submitted accordingly.