IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

January 28, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| W. D. BUTLER and J. A. HALLIBURTON | ) | KNOX COUNTY |
| | ) | 03A01-9804-CV-00146 |
| Plaintiffs-Appellants | ) | |
| | ) | |
| | ) | |
| v. | ) | HON. HAROLD WIMBERLY, |
| | ) | JUDGE |
| | ) | |
| DIVERSIFIED ENERGY, INC., | ) | |
| APPOLO FUELS, INC., and RANDY | ) | |
| C. EDGEMON | ) | |
| | ) | |
| Defendants-Appellees | ) | AFFIRMED AND REMANDED |

GARRY FERRARIS OF KNOXVILLE FOR APPELLANTS

FRANCIS L. LLOYD, JR., OF KNOXVILLE FOR DIVERSIFIED ENERGY, INC., and RANDY C. EDGEMON

ANDREW CRAIG TROUTMAN OF KNOXVILLE FOR APOLLO FUELS, INC.


O P I N I O N


Goddard, P.J.



This is a suit by W. D. Butler and J. A. Halliburton, employees of Norfolk Southern Corporation against Diversified Energy/Appolo Fuels, Inc., and Randy C. Edgemon, President of Diversified Energy, seeking damages for defamation.

The Trial Court granted a summary judgment against the Plaintiffs, resulting in this appeal, wherein they raise the following issues:

I.   Is there a genuine issue of material fact whether Defendant's letter was capable of being understood as defamatory?

II.   Is there a genuine issue of material fact whether Defendant published the June 2, 1995 letter?

III. Did the trial court err in failing to deny Defendants' motion for summary judgment for Defendants' non-compliance with Tennessee Rule of Civil Procedure 56.03?

The following passages taken from the Plaintiffs' brief accurately state the facts necessary for disposition of this appeal:

## STATEMENT OF THE FACTS

Plaintiffs Butler and Halliburton have worked for Norfolk Southern Corporation ("Norfolk Southern") since 1972 and 1964, respectively.  In June 1995, Mr. Butler was an engineer and Mr. Halliburton a trainman.  For approximately six months prior to June 1995, Mr. Butler and Mr. Halliburton worked on the same crew.  The crew worked the Middlesboro mine run which included Defendant Appolo Fuels, a customer of Norfolk Southern.

Appolo Fuels is a mining company.  It has a close relationship with Defendant Diversified Energy, Inc. who handles Appolo Fuels' sales.  Defendant Randy C. Edgemon is President of Diversified Energy.

On June 1. 1995, Defendant Edgemon talked to Paul Gibson at Norfolk Southern, alleging that Mr. Butler and Mr. Halliburton were deliberately delaying the trains.  Defendant Edgemon wrote a letter to Norfolk Southern superintendent Paul Gibson on June 2, 1995, that is the basis for Plaintiffs' complaint.  The letter reads as follows:

Dear Mr. Gibson:

We at Diversified Energy/Appolo Fuels are experiencing disruptive problems out of two Norfolk Southern crew employees.  The employees are a Mr.

2

Wayne Butler and Jay Halliburton.  We are requesting that the two named employees be kept from coming onto Appolo Fuels property.

Sincerely,

DIVERSIFIED ENERGY, INC.

Randy C. Edgemon
President


Notwithstanding the fact that this case was resolved by summary judgment, a preliminary determination of whether the letter is capable of being understood as defamatory is a question of law to be determined by the court.  Memphis Publishing Co. v. Nichols, 569 S.W.2d 412 (Tenn.1978).


In Stones River Motors, Inc., v. Mid-South Publishing Co., 651 S.W.2d 713 (Tenn.App.1983), this Court stated the following (at page 719):


For a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation.  A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing.  The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule.  They must carry with them an element "of disgrace."  W. Prosser, *Law of Torts,* § 111, p. 739 (4th Ed.1971).


The Defendants have cited the case of Moore v. Dreger, 576 S.W.2d 759 (Tenn.1979), which we believe is dispositive of this appeal.  The opinion, which we quote in its entirety, is short and succinct, as is the wont of Justice Henry, its author.


OPINION

HENRY, Chief Justice.

3

Respondents Dreger and Konvalinka, two waitresses employed by petitioner Kentucky Rib-Eye, brought this action for slander per se, alleging injury to their occupational reputation. According to the complaint, respondent Moore, who managed the restaurant, stated in the presence of customers:

> You all are no longer employed here because of giving bad service. I had to pay for three meals for you [Dreger] and three meals for you [Konvalinka] because of the bad service you all gave.

The trial court granted petitioners' motion to dismiss for failure to state a claim under Tenn.R.Civ.P. 12.02(6). The Court of Appeals reversed and remanded for trial, ruling that a jury question had been raised. We granted certiorari to consider whether the statement is actionable under the circumstances. Upon consideration, we hold that it is not.

FONES, COOPER, BROCK and HARBISON, JJ., concur.

Moreover, in Stones River, Judge Conner lists a number of cases--including those from Tennessee, sister states, and federal courts--holding that various characterizations of the plaintiffs were not actionable (651 S.W.2d at page 722):

> *Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir.1978) (use of the word "swindle" to characterize the plaintiff's violation of Michigan's Blue Sky law, while "ill chosen" held not actionable); *Fram v. Yellow Cab Co. of Pittsburgh*, 380 F. Supp. 1314, 1329 (W.D.Pa.1974) (statement that the plaintiff's previous statements reflect "the sort of paranoid thinking that you get from a schizophrenic" held not actionable, because it would be understood as mere "rhetorical hyperbole"); *Reoux v. Glenn Falls Post Co.*, 18 Misc.2d 1097, 190 N.Y.S.2d 598, 600-01 (N.Y.Sup.Ct.1959) (statement that plaintiff's refusal to tell a court the whereabouts of certain money was "contumacious conduct" was not actionable, because it simply expressed an opinion that the plaintiff was "stubborn or contrary or obstinate or disobedient"); *Schy v. Hearst Pub. Co.*, 205 F.2d 750 (7th Cir.1953) (charging the plaintiffs with "gestapo-like" tactics not actionable, because it was merely "a somewhat rhetorical way of saying that their conduct was dictatorial"); *Bleecker v. Drury*, 149 F.2d 770 (2nd Cir.1945) (statement that a lawyer had committed "a fraud upon the court" was merely a "bombastic characterization of the plaintiff's maneuvers" in representing his client, and was not actionable as libel); *Williams v. Rutherford Freight*

*Lines, Inc.*, 10 N.C.App. 384, 179 S.W.2d 319, 323 (1971) (statement in the course of a labor dispute that the plaintiffs were "gangsters" is "nothing more than vituperation or name calling" and is not actionable); *Heft v. Burk*, 302 So.2d 59, 60 (La.App.1974) (statemennt that the plaintiff was "pirating" employees away from the defendant and that his actions were "totally unethical" merely expressed the defendant's strong opinion concerning the plaintiff's attempts to hire employees away from him, and were not actionable); *Brown v. Newman*, 224 Tenn. 297, 454 S.W.2d 120 (1970) (statement "have the skids been greased at city council?" not actionable).

Finally as to the first issue, we find a case from Minnesota, <u>McGrath v. TCF Bank Sav.</u>, 502 N.W.2d 801, (Minn. App.1993), in which the language used is strikingly similar to the case at bar. In that case the word describing the plaintiff was "troublemaker." In holding the use of that word was not actionable, the Court of Appeals of Minnesota, stated the following (at page 808):[1]

McGrath argues the trial court erred in granting JNOV on his defamation claim. We disagree. The oral statements at issue fall into three categories: (1) threats that McGrath would be blackballed at other banks; (2) statements between managers about McGrath; and (3) a manager's statement to employees about McGrath. Essentially, all the managers' statements involve the phrase "troublemaker." The trial court found the phrase "troublemaker" was not actionable because:

 Unlike the accusation that a person is "dishonest," which suggests specific acts which society has determined to be improper, making trouble is generally in the eye of the beholder, and for that reason cannot be proven true or false.

The trial court properly determined the phrase "troublemaker" was not actionable under either constitutional or common law standards. The term "troublemaker" lacks precision and specificity. This phrase also fails to suggest verifiable false facts about McGrath. Finally, the ambiguity of the term "troublemaker" prevents any underlying facts from being

[1]    Footnotes are omitted.

inferred from this phrase.  Accordingly, the phrase "troublemaker" is not actionable because it is constitutionally protected.

Further, the statements' lack of precision, specificity, and verifiability prevents the inference that McGrath committed specific acts that society finds reprehensible.  Thus, in this case, the phrase "troublemaker" is not defamatory under the common law. *See Weissman v. Sri Lanka Curry House, Inc.*, 469 N.W.2d 471, 473 (Minn.App.1991) (under common law, adjective such as "dishonest" was defamatory because it implied the commission of specific act or conduct society found reprehensible).

In light of our disposition of issue one, it is unnecessary that we address issue two.

As to issue three, we agree with counsel for the Defendants that the provision of Rule 56.03 of the Tennessee Rules of Civil Procedure, directing a simple concise statement of the material facts to accompany any motion for summary judgment, is for the benefit of the trial court, and could be, as it was in this case, waived.  Moreover, even if we were to find that this issue has merit, it would require remand to the Trial Court where another motion for summary judgment could be made, meeting the omitted requirement of Rule 56.03.  Even if a second motion for summary judgment is not filed and the facts remain as are contained in the present record, a motion for a directed verdict would be sustained at the conclusion of the Plaintiffs' proof.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below.  Costs of appeal are adjudged against the Plaintiffs and their surety.

6

_____
                    Houston M. Goddard, P.J.


CONCUR:



_____
Don T. McMurray, J.



_____
Charles D. Susano, Jr., J.